**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| K.S., | : Civil Case No.: 17-CV-7489-BRM-LHG |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| THALES USA, INC., and CAREFIRST | : |
| BLUE CROSS BLUE SHIELD | : |
| | : |
| Defendants. | : |
| | : |

---

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED
COMPLAINT**

---

**BECKER LLC**
Michael E. Holzapfel, Esq. (031022002)
354 Eisenhower Parkway, Suite 1500
Livingston, New Jersey 07039
(973) 422-1100
Attorneys for Defendants

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 4

LEGAL ARGUMENT........................................................................................................... 8

    STANDARD OF REVIEW ............................................................................................... 8

POINT I ............................................................................................................................. 9

    COUNT ONE FAILS TO STATE A CLAIM BECAUSE THE FAC DOES NOT
    TIE PLAINTIFF'S CLAIM THAT DEFENDANTS FAILED TO PAY BENEFITS
    DUE UNDER THE THALES PLAN TO ANY PLAN TERM OR CONDITION................... 9

POINT II ........................................................................................................................... 14

    COUNT TWO FAILS TO STATE A CLAIM BECAUSE THE FAC DOES NOT
    ALLEGE THAT AN ERISA PARTICIPANT OR BENEFICIARY MADE A
    VALID REQUEST FOR REQUIRED INFORMATION OF A PLAN
    ADMINISTRATOR ...................................................................................................... 14

        A.    No Plan "Participant" or "Beneficiary" Made a Request for a SPD of a "Plan
             Administrator ........................................................................................................ 14

        B.    ERISA Does Not Require Disclosure of "Fee Schedules" in Any Case ................. 18

CONCLUSION................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Orthopedic & Sports Medicine v. Independence Blue Cross*,
890 F.3d 445 (3d Cir 2018).................................................................................. 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................. 8

*Atl. Spinal Care v. Aetna*,
2014 W.L. 1293246 (D.N.J. Mar. 31, 2014).......................................................... 17

*Atlantic Plastic and Hand Surgery, PA v. Anthem Blue Cross and Health Ins. Ins. Co.*,
2018 W.L. 1420496 (D.N.J. Mar. 22, 2018)........................................................... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................. 8

*Bergamatto v. Bd. of Trustees of N.Y. Ship. Assn' Intl. Longshoremen's Assn' Pension Fund*,
2018 W.L. 3412990 (D.N.J. Jul. 12, 2018)............................................................ 17

*Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*,
2012 W.L. 762498 (D.N.J. Mar. 6, 2012)............................................................... 18

*Byars v. Coca Cola Co.*,
517 F.3d 1256 (11th Cir. 2008) ............................................................................ 20

*Campo v. Oxford Health Plans, Inc.*,
2007 W.L. 1827220 (D.N.J. Jun. 26, 2007)........................................................... 18

*Cape Reg'l Med. Ctr. v. Cigna Health & Life Ins. Co.*,
2018 W.L. 2980386 (D.N.J. June 14, 2018)........................................................... 13

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011)............................................................................................. 5

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
2013 W.L. 5780815 (D.N.J. Oct. 25, 2013)........................................................... 17

*Cohen v. Horizon Blue Cross Blue Shield of New Jersey*,
2017 W.L. 3623832 (D.N.J. Jun. 29, 2017)........................................................... 11

*Curtiss – Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995)............................................................................................... 10

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009).......................................................................... 8

*Franco v. Connecticut Gen. Life Ins. Co.*,
818 F.Supp. 2d 792 (D.N.J. 2011) ................................................................ 19

*Gerritsen v. Warner Bros. Ent.*,
112 F.Supp.3d 1011 (C.D.Cal. 2015) ............................................................ 5

*Grange Consulting Group v. Bergstein*,
2014 W.L. 5587710 (D.N.J. Nov. 3, 2014) .................................................... 8

*Groves v. Modified Ret. Plan*,
803 F.2d 109 (3d Cir. 1986)......................................................................... 20

*Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*,
24 F.3d 1491(3d Cir. 1994)........................................................................... 15

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)......................................................................... 4

*Kennedy v. Plan Administrator of DuPoint Savings & Investment Plan*,
555 U.S. 285 (2009)...................................................................................... 10

*Kollman v. Hewitt Associates, LLC*,
487 F.3d 139 (3d Cir. 2007).......................................................................... 20

*Krauss v. Oxford Health Plans, Inc.*,
517 F.3d 614 (2d Cir. 2008)........................................................................... 17

*LeMoine v. Empire Blue Cross Blue Shield*,
2018 W.L. 1773498 (D.N.J. Apr. 12, 2018) .................................................. 13

*Lum v. Bank of America*,
361 F.3d 217 (3d Cir. 2004)............................................................................. 4

*Martin v. Dowling*,
2006 W.L. 2711643 (D.N.J. Sep. 21, 2006) .................................................... 5

*McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*,
2009 W.L. 3242136 (D.N.J. Oct. 7, 2009)....................................................... 13

*McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*,
2011 W.L. 4455994 (D.N.J. Sep. 23, 2011) .................................................... 19

*Moore v. Middlesex County Prosecutor's Office*,
2012 W.L. 1716092 (D.N.J. May 10, 2012) ................................................................. 5

*Nechis v. Oxford Health Plans, Inc.*,
421 F.3d 96 (2d Cir. 2005) ........................................................................................ 18

*Perreca v. Gluck*,
295 F.3d 215 (2d Cir. 2002) ...................................................................................... 10

*Piscopo v. Pub. Serv. Elec. & Gas Co.*,
2015 W.L. 3938925 (D.N.J. June 25, 2015) .............................................................. 13

*Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*,
2018 W.L. 2441768 (D.N.J. May 31, 2018) ............................................................... 15

*Prof'l Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*,
697 Fed. Appx. 39 (2d Cir. 2017) .............................................................................. 13

*Sgro v. Danone Waters of N. Am., Inc.*,
532 F.3d 940 (9th Cir. 2008) ..................................................................................... 17

*Shah v. Horizon Blue Cross Blue Shield of New Jersey*,
2018 W.L. 1509087 (D.N.J. Mar. 27, 2018) .............................................................. 12

*Spine Surgery Assocs. & Discovery Imaging, PC v. INDECS Corp.*,
50 F. Supp. 3d 647 (D.N.J. 2014) .............................................................................. 15

*Tennenbaum v. Unum Life Ins. Co. of Am.*,
2010 W.L. 2649875 (E.D. Pa. Jun. 30, 2010) ............................................................ 17

*Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*,
2018 W.L. 4144684 (D.N.J. Aug. 29, 2018) .............................................................. 13

*University Spine Center v. Anthem Blue Cross Blue Shield*,
2018 W.L. 3327930 (D.N.J. Jul. 5, 2018) .................................................................. 17

*University Spine Center v. Cigna Health and Life Ins. Co.*,
2018 W.L. 3814279 (D.N.J. Aug. 10, 2018) .............................................................. 18

*Wilczynski v. Lumbermens Mut. Cas. Co.*,
93 F.3d 397 (7th Cir. 1996) ...................................................................................... 20

**Statutes, Rules and Regulations**

29 C.F.R. 2560.503-1 ................................................................... 19-20

29 C.F.R. § 2575.502c-1 .................................................................. 15

29 U.S.C. § 1002 ........................................................................... 16

29 U.S.C. § 1022 ........................................................................ 5, 15

29 U.S.C.A. § 1024 ......................................................................... 14

29 U.S.C. § 1132 ..................................................................... passim

Fed. R. Civ. P. 12 ........................................................................... 8

## PRELIMINARY STATEMENT

Defendants Thales USA, Inc. ("Thales") and CareFirst of Maryland, Inc., doing business as CareFirst Blue Cross Blue Shield ("CareFirst"), respectfully submit this brief in support of their motion to dismiss Count Two of the First Amended Complaint ("FAC") [Docket No. 23] pursuant to Federal Rule of Civil Procedure 12(b)(6).

The FAC is The Plastic Surgery Center, P.A.'s ("TPSC") second attempt at a forced judicial rewrite of the benefits prescribed by its patient's employer-sponsored health benefits plan. On February 6, 2015, the patient – identified in the Complaint as "K.S." – underwent a surgery performed by a physician affiliated with TPSC. On the date of service, K.S. was enrolled in a self-funded health benefit plan ("Thales Plan") sponsored by Thales for the benefit of its employees and their dependents. CareFirst is the Thales Plan's designated third-party administrator. There is no dispute that the Thales Plan is an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), nor is there any dispute that ERISA governs this lawsuit.

TPSC claims to have submitted a "standard bill" for K.S.'s surgery in the amount of $104,968. The Thales Plan's prescribed benefit for the surgery, however, was $10,483. Although the FAC does not allege that CareFirst or Thales represented to TPSC prior to the surgery that TPSC would be paid $104,968 for its services – indeed, the FAC does not allege that TPSC even discussed with Defendants what its charge would be prior to the surgery – the nub of the pleading is that TPSC, an out-of-network provider, was entitled to be paid dollar-one of whatever bill it submitted. The FAC advances this theory under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which allows ERISA plan "participants" and "beneficiaries" to bring civil actions to recover plan benefits wrongfully denied or withheld. As a bootstrap, the FAC also seeks statutory per diem

1

penalties under ERISA § 502(c), 29 U.S.C. §1132(c), for Defendants' alleged failure to provide a copy of the Thales Plan's Summary Plan Description ("SPD") and other information prior to suit.

Although K.S. is now the named plaintiff, as the Court is aware K.S. did not commence this lawsuit. Rather, plaintiff counsel commenced this lawsuit on September 27, 2017 by filing a complaint ("Original Complaint") [Docket No. 1] in TPSC's name as an alleged assignee of K.S.'s Thales Plan benefits. Through an assignment of benefits, TPSC claimed an ability to stand in K.S.'s shoes as a "participant" or "beneficiary" with standing under ERISA to assert benefit-related and statutory claims. The Thales Plan, however, contains an express anti-assignment clause, which divested TPSC of standing to prosecute the Original Complaint in a derivative capacity. Accordingly, Defendants filed a motion to dismiss the Original Complaint [Docket No. 13]. In response, TPSC filed a cross-motion [Docket No. 18] seeking leave to add K.S. as a named plaintiff. In an order dated May 24, 2018 [Docket No. 22], the Court dismissed TPSC from this case with prejudice give its clear lack of standing, but permitted counsel to file the FAC in K.S.'s name. The only difference between the Original Complaint and the FAC is that, in the Original Complaint, TPSC attempted to assert ERISA § 502(a) and § 502(c) claims in a derivative capacity, whereas in the FAC, K.S. is now asserting those same claims as an actual, statutory ERISA "participant" or "beneficiary."

Defendants now move to dismiss. While K.S. has standing, the FAC's pleaded claims are, substantively, no less infirm than they were when TPSC endeavored to assert them in the Original Complaint. With regard to Count One, the only factual predicates set forth in the FAC for K.S.'s assertion that she is entitled to recover additional Thales Plan benefits under ERISA § 502(a) for the subject surgery are: (i) that the surgery was medically necessary; (ii) that the benefit which the Thales Plan paid was only ten percent of the total bill TPSC submitted; and (iii) that TPSC once

2

got paid more money under the Thales Plan for a never-described "related surgery" it performed three months earlier. Apart from being facially dubious, these assertions are insufficient under federal pleading standards to support a claim for additional benefits under ERISA § 502(a). Nothing in ERISA, ERISA's interpretive case law, or the plan documents (which this Court may consider on a motion to dismiss) obligated the Thales Plan to pay TPSC's billed charges. The Thales Plan's only obligation was to pay the prescribed benefit for the subject surgery, and according to documents integral to the FAC that is what the Thales Plan did.  Whether TPSC or K.S. felt that the amount of that benefit was reasonable or not is irrelevant to an ERISA § 502(a) cause of action, nor is whether or TPSC once got paid a higher plan benefit for a different service performed months earlier.

With regard to Count Two, the FAC contends that K.S. is entitled to statutory penalties under ERISA § 502(c) because, months *after* the surgery, CareFirst failed to produce a copy of the Thales Plan's SPD upon request, and also failed to disclose a "fee schedule" referenced in a claims adjudication letter. Count Two fails as a matter of law for several reasons. First, as a threshold matter, CareFirst *did* disclose the allowed amounts for the subject surgery in the memorializing Explanation of Benefits ("EOB"), and ERISA does not require anything more. Second, ERISA § 502(c) penalties may only be assessed where a plan "participant" or "beneficiary" makes a valid request for a SPD to an ERISA "plan administrator" and the plan administrator refuses without basis to respond. According to the FAC, it was TPSC, not K.S., who made the request for an SPD, and TPSC is neither a "participant" nor a "beneficiary" under ERISA. Third, TPSC made the request for a SPD to CareFirst, not Thales, who is the "plan administrator." Because the FAC does not – and cannot – plead that K.S. actually followed the statutory process for requesting an SPD, Count Two must fail.

**STATEMENT OF FACTS**

Although, as a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings, a well-established exception to this rule is that a court may consider a document integral to or relied upon in the complaint without converting a motion to dismiss into a motion for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also Lum v. Bank of America*, 361 F.3d 217, 222, n.3 (3d Cir. 2004)(in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiffs' claim). Thus, because the FAC expressly references the Thales Plan, CareFirst's payment of benefits, TPSC's request for information, and CareFirst's response, the Court may consider the documents attached to the accompanying Certification of Kim Rothman ("Rothman Cert.") in deciding this motion, in addition to the facts pleaded in the FAC itself. Accordingly, based on K.S's pleading and the documents intrinsic thereto, the relevant facts are as follows:

On or about February 6, 2015, K.S. underwent a surgery performed by Dr. Russell Ashinoff, a surgeon affiliated with TPSC. *FAC*, ¶ 9; *Rothman Cert.*, ¶ 2.  On the date of service, K.S. had health coverage through the Thales Plan, a self-funded group health benefit plan in which Thales participates as a sponsor. *FAC*, ¶¶ 2, 7, 8; *Rothman Cert.*, ¶ 3, Exs. A-B. CareFirst provides administrative services for the medical component of the Thales Plan pursuant to an administrative services agreement with Thales. *Rothman Cert.*, ¶ 3. Thales also contracts with CareFirst to utilize CareFirst's network of medical providers to provide services and supplies at CareFirst's discounted, in-network provider rates. *Id*. The coverage terms, conditions, limitations, and exclusions of the Thales Plan are set forth in a document known as an "Evidence of Coverage" ("EOC"). *Rothman Cert.*, Ex. A.  Thales, however, as the self-insuring sponsor of the plan and

4

plan administrator, drafts its own SPD summarizing pertinent plan information for the various benefit components of the Thales Plan (medical, dental, life, disability, etc.). *Id.*, ¶¶ 4-5, Ex. B.[1] There is no dispute that the Thales Plan is an ERISA plan in that is a plan or fund established by an employer (Thales) for the purpose of providing its employees and their beneficiaries with health benefits. *FAC*, ¶ 4; *Rothman Cert.*, Exs. A (pages 93 *et seq.*) and B (passim). The SPD is clear, moreover, that Thales, not CareFirst, is the "plan administrator" for ERISA purposes. *Rothman Cert.*, Ex. B (e.g., pages 81, 94, 107, 169 et seq.).

Following Dr. Ashinoff's performance of the surgery, TPSC submitted what it considered a "standard bill" to CareFirst for $104,968. *FAC*, ¶ 10. Following an initial denial of the claim, CareFirst ultimately processed payment under the Thales Plan in the amount of $10,483.62 for K.S.'s procedure, which amounted to approximately 9.98% of TPSC's bill. *FAC*, ¶¶ 11-13.  On or about June 12, 2015, CareFirst issued an EOB memorializing this payment, identifying the Thales Plan-prescribed allowances applicable to each billed claim line, and generally explaining K.S.'s rights under ERISA. *Rothman Cert.*, Ex. C.  Although the FAC is less than clear on this point, the pleading intimates that TPSC expected to be reimbursed at least somewhere in the range of 41.9% of its total bill based on a never-explained "related surgery" which K.S. underwent months earlier with TPSC on November 5, 2014. *FAC*, ¶ 20.

In the interim, the FAC alleges that K.S., as "plaintiff," engaged in and exhausted the Thales Plan's administrative appeals process seeking an enhanced out-of-network benefit, *FAC*,

---

[1]     An SPD, as the name suggests, is intended to "summarize" statutorily-defined categories of ERISA information (e.g., names and addresses of plan agents and administrators, plan requirements for eligibility, the source of financing of the plan, etc.), but an SPD itself is not an integrated compilation of all plan terms, conditions, limitations, and exclusions. *See* 29 U.S.C. § 1022(b); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011)("statements in a SPD "communicat[e] with beneficiaries *about* the plan, but…do not themselves constitute the *terms of the plan*")(emphasis in original).

¶¶ 13-15. However, the Original Complaint alleged that it was TPSC, as "plaintiff," and not K.S., who engaged in the appeals process. *Original Complaint*, ¶¶ 13-15.[2]  In any case, both pleadings allege that it was TPSC, not K.S., who requested a copy of the SPD over the course of the administrative appeals process, and that TPSC made its request to CareFirst, not Thales. *FAC*, ¶¶ 23-24; *Original Complaint*, ¶¶ 25-26.  The FAC specifically references a letter from TPSC dated April 9, 2015, in which TPSC made a purported request for an SPD to CareFirst (and, for some reason, to Horizon Blue Cross Blue Shield of New Jersey), although nowhere in that letter did TPSC tie the alleged reimbursement it sought to any particular provision of the Thales Plan or other authority. *FAC*, ¶ 23; *Rothman Cert.*, Ex. D. In fact, in its letter TPSC demanded reimbursement of an additional $169,915, which was approximately $65,000 more than it actually billed. *FAC*, ¶ 10; *Rothman Cert.*, Ex. C.  In that letter, TPSC also purported to demand a copy of the "fee schedules" applicable to the subject claims. *FAC*, ¶ 23; *Rothman Cert.*, Ex. D.

The FAC also references a May 22, 2015 response from CareFirst.  *FAC*, ¶ 13. In that response, CareFirst advised K.S., with a copy to TPSC, that because TPSC is out-of-network, K.S. is responsible for any portion of the provider's bill beyond the allowed amounts prescribed by the Thales Plan. *Rothman Cert.*, Ex. E. That response also generally explained K.S.'s rights of further judicial review under ERISA. *Id.*

Neither K.S. nor TPSC obtained any satisfaction from the administrative appeals process and this suit followed. When plaintiff counsel commenced suit on September 26, 2017 [Docket

---

[2]      Although the Original Complaint is not the operative complaint, the Court may take judicial of entries on the federal docket, and particularly of entries on its own docket.  *Martin v. Dowling*, 2006 W.L. 2711643 (D.N.J. Sep. 21, 2006); *Moore v. Middlesex County Prosecutor's Office*, 2012 W.L. 1716092 (D.N.J. May 10, 2012)(Linares, J.); *Gerritsen v. Warner Bros. Ent.*, 112 F.Supp.3d 1011, 1034 (C.D.Cal. 2015)("It is well-established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence").

No. 1], it named TPSC only as a plaintiff. TPSC alleged the same two ERISA causes of action against Defendants, purporting to be able to assert derivative ERISA beneficiary standing through an assignment of benefits. Defendants moved to dismiss [Docket No. 13] on grounds that TPSC lacked standing to assert ERISA claims in a derivative capacity through an assignment of benefits because the Thales Plan prohibited assignments through an unambiguous anti-assignment clause. In response, TPSC took the position that, while it did not concede the validity or enforceability of the anti-assignment clause, it should be permitted to file the FAC (which it sought to do via a cross-motion for leave to amend) substituting K.S. for TPSC as the named plaintiff [Docket No. 18]. In that response, TPSC also requested that Defendants' motion be denied as "moot." In reply to TPSC's response [Docket No. 19], Defendants did not object to the filing of the FAC in K.S.'s name, but argued that TPSC's dismissal from the case should be with prejudice given that its standing was clearly foreclosed by the anti-assignment clause. In an order entered on January 18, 2018 [Docket No. 21], the Court granted plaintiff counsel's request for permission to file a two-page sur-reply to Defendants' reply brief, but four months passed without any additional filings from TPSC or K.S. Accordingly, in an order dated May 24, 2018 [Docket No. 22], the Court dismissed TPSC with prejudice and directed plaintiff counsel to file the FAC. Counsel did so, although not until August 21, 2018 [Docket No. 23]. Defendants now move to dismiss.

## LEGAL ARGUMENT

## STANDARD OF REVIEW

Although motions to dismiss under Rule 12(b)(6) are generally analyzed by affording the plaintiff all favorable inferences that can be gleaned from a well-pleaded statement of facts, federal courts reject general "notice pleading" standards that typically apply under state rules of civil procedure, and they require a more heightened "plausibility" standard. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  While federal standards do not require a plaintiff to prove, at the pleading stage, an entitlement to relief through a recitation of every last minute detail related to his claims, they *do* require him to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Grange Consulting Group v. Bergstein*, 2014 W.L. 5587710, at * 1 (D.N.J. Nov. 3, 2014)(quoting *Twombly*).

Further, while a court will accept well-pleaded allegations as true for purposes of a Rule 12(b)(6) motion, "it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations."  *Id.* (quoting *Iqbal*).  Also, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Twombly*, 550 U.S. at 679.  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*.

The FAC requires dismissal under this standard.

## POINT I

### COUNT ONE FAILS TO STATE A CLAIM BECAUSE THE FAC DOES NOT TIE PLAINTIFF'S CLAIM THAT DEFENDANTS FAILED TO PAY BENEFITS DUE UNDER THE THALES PLAN TO ANY PLAN TERM OR CONDITION.

K.S. brings Count One of the FAC under ERISA § 502(a)(1)(B), which allows a plan "participant" or "beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Here, K.S. is plainly not seeking a declaratory order clarifying future benefits under the terms of the Thales Plan. Instead, K.S. contends that the Thales Plan should have paid 100% of TPSC's billed charge of $104,968 as an out-of-network benefit for her surgery, and she seeks an order awarding money damages accordingly.

However, neither the Thales Plan documents specifically nor ERISA in general requires ERISA plan's to pay an out-of-network provider's billed charges, or even a certain percentage of billed charges. On the contrary, the Thales Plan was only obligated to pay its "allowed amount," which was disclosed in the EOB and defined in the plan documents as follows:

> For a Health Care Provider that has not contracted with CareFirst, the Allowed Benefit for a Covered Service is as follows:
>
> a. Non-Preferred health care practitioner: For a healthcare practitioner that has not contracted with CareFirst, the Allowed Benefit for a Covered Service is based upon the lesser of the provider's actual charge or established fee schedule which, in some cases, will be a rate specified by applicable law. The benefit is payable to the Subscriber or to the health care practitioner, at the discretion of CareFirst. If CareFirst pays the Subscriber, it is the Member's responsibility to pay the health care practitioner. Additionally, the Member is responsible for any applicable Member payment amounts, as stated in the Schedule of Benefits, and for the difference between the Allowed Benefit and the health care practitioner's actual charge.

*Rothman Cert.*, Ex. A (page 4).

This definition was further recited in CareFirst's May 22, 2015 to K.S. *Rothman Cert.*, Ex. E. Nowhere over the course of the administrative appeals process, moreover, did TPSC or K.S. ever once explain the source of their contention that TPSC was entitled to something other than the Thales Plan's allowed amounts explained on the EOB. *Rothman Cert.*, Ex. D. The FAC simply contains no allegations tying TPSC's demand for in excess of $100,000 in additional plan benefits to the plan itself or to any other conduct on the part of the Defendants.

As a matter of federal law, Defendants were prohibited from paying anything *other than* the Thales Plan's prescribed out-of-network allowances. *See Kennedy v. Plan Administrator of DuPoint Savings & Investment Plan,* 555 U.S. 285, 300 (2009) ("The plan administrator did its statutory ERISA duty by paying the benefits…in conformity with the plan documents….The plan administrator is obliged to act in accordance with the documents and instruments governing the plan"); *Curtiss – Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (ERISA's statutory scheme "is built around reliance on the face of written plan documents"); *Perreca v. Gluck,* 295 F.3d 215, 225 (2d Cir. 2002) (noting that requirement that plan terms be in writing "protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan"). Nothing in the Thales Plan, ERISA, or ERISA case law confers a right upon TPSC, as a non-participating provider, or K.S. to demand anything other than the out-of-network allowance which Thales has opted to underwrite as a prescribed benefit. As the EOC and EOB note, an out-of-network provider is free to "balance bill" its patient for any billed charges not covered by his patient's health plan. *Rothman Cert.*, Exs. A, B, C. But it is the patient, and not the health plan, who is responsible for that balance. Whether the patient may ultimately be able to satisfy that balance is a risk that both provider (who chooses

to be out-of-network) and patient (who chose to leave his network for an elective procedure, and thus forego the protections of an in-network service, the financial risk of which would have been limited to any in-network co-payments) chose to assume.

At bottom, Plaintiff is asking this Court to gut the terms of the Thales Plan and replace K.S.'s prescribed out-of-network benefit schedule with one that is more to Plaintiff's subjective liking. This Plaintiff cannot do. *See, e.g., Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, 2017 W.L. 3623832, at * 1 (D.N.J. Jun. 29, 2017) (deeming state law based complaint disputing quantum of plan's allowed benefit to be completely preempted by ERISA because the provider was trying to "effectively force an ERISA plan to adopt a certain scheme of substantive coverage"), *R&R adopted* 2017 W.L. 3623746 (D.N.J. Aug. 22, 2017). As Judge Hillman succinctly summed up in another recent out-of-network provider case in which the provider was dissatisfied with his patient's plan's prescribed ERISA benefits and sought an enhanced reimbursement through ERISA § 502(a):

> ERISA-governed employer-sponsored health plans are complicated and comprehensive documents. There are several reasons for this. There are many types of medical providers and myriad services they perform. There are many ways to set a rate for or value those services. A plan must determine what it will cover, what it will not, and what it will pay as benefits. The plans may cover large groups of employees, may cover multiple employers, and apply across state borders. They are subject, therefore, to state and federal regulation and the pressures of a competitive marketplace. They set and define processes to consider, evaluate, and pay out benefits and for administrative review of disputes. And like any well-drafted contract a plan would seek to anticipate and address all foreseeable scenarios.

> When [the Patient] first consulted [the Plaintiff Provider] about his services, he had several options. First, he could have set what he perceived as the market rate for his services and conditioned providing his services on the payment of that fee, leaving to the patient reimbursement under applicable insurance.

> Second, he could have agreed to accept [the Patient's] insurance and the benefit it provided (70% of 150% of the Medicare rate for the covered service) and billed [the Patient] for the remaining 30% of the allowed and clearly defined benefit.
>
> What he could not do was accept the benefit under the Plan, take an assignment from [the Patient] of any additional claims she might have, and through this lawsuit seek to blow up—without legal or factual support—the carefully and clearly drafted mutually beneficial agreement between [the Patient's] spouse's employer and Defendant. Plaintiff's claim that he is entitled to 70% of the fee he has set for his services as against this Defendant lacks any support in the law or the Plan terms. Despite his protestations to the contrary, as the Court can best discern, Plaintiff seeks his demanded fee of over $217,000 simply because he thinks he's entitled to it.

*Shah v. Horizon Blue Cross Blue Shield of New Jersey*, 2018 W.L. 1509087, at *5 (D.N.J. Mar. 27, 2018).

Although the plaintiff in this case is an individual plan beneficiary, the claims she asserts (which, in light of the procedural history, she is clearly asserting merely as a conduit for TPSC), are no different in substance from the provider's claims in *Shah*. K.S. (and TPSC) are simply dissatisfied with the out-of-network benefit applicable to this procedure. But in order to translate that dissatisfaction into a colorable claim for in excess of $100,000 due "under the terms of the [Thales] plan" for purposes of ERISA § 502(a)(1)(B), K.S. must necessarily tie that claim to a specific plan term. But K.S. cannot do so, and the FAC contains no information from which the Court may infer otherwise in a manner consistent with federal pleading standards. The FAC is predicated on but three, threadbare factual assertions: (i) the surgery was medically necessary; (ii) the out-of-network benefit for the surgery was only a small percentage of TPSC's total bill; and (iii) TPSC once got paid more money under the Thales Plan for a never-described "related surgery" it performed three months earlier. Even if the Court takes these assertions at face value (Defendants do not, in fact, dispute that the subject surgery was medically necessary), they do not remotely

support an inference that the Thales Plan's terms, conditions, limitations, and exclusions *required*

Defendants, pursuant to their legal obligations under federal law (*see supra*), to pay TPSC's billed

charges.

Courts have not hesitated to dismiss similarly ill-pleaded ERISA. In *Atlantic Plastic and*

*Hand Surgery, PA v. Anthem Blue Cross and Health Ins. Ins. Co.*, 2018 W.L. 1420496, * 10-12

(D.N.J. Mar. 22, 2018), Judge Wolfson dismissed a complaint that failed to plausibly state a claim

for denial of benefits under ERISA § 502(a) because the plaintiff failed to tie its central allegation

that the plan failed to pay its "usual and customary charge" to any provision of the plan. Judge

Wolfson also noted that several courts had previously dismissed similar ERISA claims when the

complaint failed to identify the plan provision that had allegedly been violated. *Id.* at * 11 (citing

*Piscopo v. Pub. Serv. Elec. & Gas Co.*, 2015 W.L. 3938925, at *5 (D.N.J. June 25, 2015), *aff'd*,

650 Fed. Appx. 106 (3d Cir. 2016); *McDonough v. Horizon Blue Cross Blue Shield of New Jersey,*

*Inc.*, 2009 W.L. 3242136, at *3 (D.N.J. Oct. 7, 2009); *Prof'l Orthopaedic Assocs., PA v. 1199SEIU*

*Nat'l Benefit Fund*, 697 Fed. Appx. 39, 41 (2d Cir. 2017).  And in the six months since Judge

Wolfson issued her opinion, several other courts have cited *Atlantic Plastic and Hand Surgery*

with approval in dismissing ERISA § 502(a) claims at the pleading stage that fail to tie demands

for additional benefits "under the terms of a plan" to an actual plan term. *See, e.g., Univ. Spine*

*Ctr. v. Cigna Health & Life Ins. Co.*, 2018 W.L. 4144684, at *3 (D.N.J. Aug. 29, 2018)(McNulty,

J.); *Cape Reg'l Med. Ctr. v. Cigna Health & Life Ins. Co.*, 2018 W.L. 2980386, at *3 (D.N.J. June

14, 2018)(Rodriguez, J.); *LeMoine v. Empire Blue Cross Blue Shield*, 2018 W.L. 1773498, at *6

(D.N.J. Apr. 12, 2018)(Vazquez, J.).

Here, because the FAC contains no allegations tying Defendants' alleged failure to pay benefits to which K.S. was entitled "under the terms of her plan" to an actual plan term, Count One fails to state a claim and must be dismissed.

## POINT II

**COUNT TWO FAILS TO STATE A CLAIM BECAUSE THE FAC DOES NOT ALLEGE THAT AN ERISA PARTICIPANT OR BENEFICIARY MADE A VALID REQUEST FOR REQUIRED INFORMATION OF A PLAN ADMINISTRATOR.**

Count Two of the FAC is equally defective. K.S. seeks statutory penalties for failure to provide TPSC with two items, specifically the SPD, *Rothman Cert.*, Ex. B, and the "fee schedules" referenced in CareFirst's  May 22, 2015 letter. *FAC*, ¶ 23; *Rothman Cert.*, Ex. E. Defendants discuss each item in turn.

### A. No Plan "Participant" or "Beneficiary" Made a Request for a SPD of a "Plan Administrator."

ERISA § 104(b)(4) provides: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C.A. § 1024(b)(4). A plan administrator's failure to comply with a valid request under ERISA § 104(b)(4) triggers liability under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1) – the provision under which Count Two seeks relief. ERISA § 502(c)(1) provides:

> Any administrator…who fails or refuses to comply with a request for any information which such administrator is required by [Subchapter 1] of ERISA to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonable beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or

refusal, and the court may in its discretion order such other relief as
it deems proper.[3]

Therefore, to state a claim under ERISA Section 502(c)(1), "a plaintiff must allege that 1) it made

a [written] request to a plan administrator, 2) who was required to provide the requested material,

but 3) failed to do so within 30 days of the request." *Spine Surgery Assocs. & Discovery Imaging,*

*PC v. INDECS Corp.*, 50 F. Supp. 3d 647, 656 (D.N.J. 2014). As recently recognized in a similar

case also brought by TPSC, "[a]s a penal statute, the terms of § 502(c)(1) must be 'construed

strictly,' *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*, 24 F.3d 1491,

1505 (3d Cir. 1994), and thus, a plaintiff seeking relief under § 502(c)(1) must demonstrate

compliance with each of these statutory requirements." *Plastic Surgery Ctr., P.A. v. Cigna Health*

*& Life Ins. Co.*, No. 2018 W.L. 2441768, at *9 (D.N.J. May 31, 2018). K.S. fails to meet these

requirements.

First, by its terms, ERISA § 104(b)(4) applies only to requests for SPDs made by plan

"participants" and "beneficiaries." A participant is "any employee or former employee of an

employer, or any member or former member of an employee organization, who is or may become

eligible to receive a benefit of any type from an employee benefit plan," and a "beneficiary is "a

person designated by a participant, or by the terms of an employee benefit plan, who is or may

become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(7)-(8). K.S. certainly qualifies as a

participant or beneficiary. According to the FAC, however, it was not K.S. who made the request,

but TPSC, a medical provider. *See FAC*, ¶¶ 23-26. It is well established that medical providers are

not participants or beneficiaries in their own right under ERISA. *American Orthopedic & Sports*

*Medicine v. Independence Blue Cross*, 890 F.3d 445 (3d Cir 2018).  And while "beneficiary" status

---

[3]      The penalty was subsequently increased to $110 per day for violations occurring after June
29, 1997.  *See* 29 C.F.R. § 2575.502c-1.

may be transferred to a provider through a valid assignment of benefits, thereby permitting a provider to assert derivative beneficiary standing under ERISA, that presumes that the plan in question authorizes assignments in the first instance. *See id*. The Thales Plan is not such a plan.

It is now firmly established in the Third Circuit (and in every other circuit to have taken up the issue) that if a plan prohibits assignments through a valid anti-assignment clause (and assuming the clause is not waived), the provider cannot assert derivative beneficiary standing under ERISA. *Id.*  Here, of course, the Thales Plan contains a clear and unambiguous anti-assignment clause, which was the whole catalyst for the FAC in the first place. Because of the Thales Plan's anti-assignment clause, Defendants moved to dismiss the Original Complaint filed by TPSC for lack of standing. TPSC did not dispute that it could not claim participant or beneficiary status under ERISA through an assignment of benefits, which is why it filed the FAC substituting K.S., the actual participant, as the named plaintiff. But since K.S. never made the SPD request on which the FAC is based, her ERISA § 502(c) claim must necessarily fail.

Second, by their terms, ERISA §§ 104(b)(1) and 502(c) impose liability for administrative penalties only where demands are made of a plan "administrator," which is a statutorily-defined term. Under ERISA, a plan "administrator" is an individual or entity specifically defined in the plan itself as the administrator. 29 U.S.C. § 1002(16)(A)-(B). If no such individual or entity is specifically designated as the plan administrator, then the plan administrator is the plan "sponsor," i.e., the employer or employee organization (e.g., a labor union) who maintains the plan – in this case Thales. *Id*. And if, in those rare instances where a plan does not specifically designate a "plan administrator" and the sponsor cannot be identified, the role of plan administrator defaults to whomever the Secretary of Labor may designate by regulation. *Id.*  It is well-established that a party who is not a plan administrator cannot be held liable for failure to produce plan documents

16

liable under ERISA § 502(c)(1)(B)). *See, e.g., Atl. Spinal Care v. Aetna*, 2014 W.L. 1293246 (D.N.J. Mar. 31, 2014); *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2013 W.L. 5780815 (D.N.J. Oct. 25, 2013); *Bergamatto v. Board of Trustees of New York Shipping Association International Longshoremen's Association Pension Fund*, 2018 W.L. 3412990, at * 9-10 (D.N.J. Jul. 12, 2018).

Thales, the employer and sponsor (of whose identify K.S. is presumed to have been aware), is the plan administrator, not CareFirst. *Rothman Cert.*, Ex. B (e.g., pages 14, 81, 94, 107, 164 et seq.). CareFirst provides claims administration services to the Thales Plan, but it is not the plan administrator or sponsor. *Rothman Cert.*, ¶¶ 4-5, Exs. A. However, on the face of the FAC, TPSC made its demand for an SPD only to CareFirst. It is well-established that claims administrators such as CareFirst, who process claims and handle other administrative functions for self-funded plans, do not qualify as plan "administrators" for purposes of liability under ERISA § 502(c). *See University Spine Center v. Anthem Blue Cross Blue Shield*, 2018 W.L. 3327930, at * 6 (D.N.J. Jul. 5, 2018); *see also Tennenbaum v. Unum Life Ins. Co. of Am.*, 2010 W.L. 2649875, at *10 (E.D. Pa. Jun. 30, 2010); *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 945 (9th Cir. 2008)(finding that insurance company that made benefits determinations under employer's ERISA plan as insurer could not be liable under Section 1132(c)(1) because it was not "the plan administrator"); *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008) (finding that plaintiffs could not recover statutory damages under ERISA Section 502(c)(1) against insurance company that served as claims administrator for ERISA plan because defendant was "not a plan 'administrator' within the meaning of ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1)"). Indeed, even in the context of fully-insured plans, an insurance company that underwrites, administers, and operates employee benefit plan for single employer does not qualify as "plan

administrator" and thus is not liable for alleged breach of disclosure obligation under § 1024(b) and § 503(c).   *See, e.g., Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005).

As a claims administrator, and not a plan administrator, CareFirst simply had no duty to provide TPSC with an SPD. *See University Spine Center v. Cigna Health and Life Ins. Co.*, 2018 W.L. 3814279 (D.N.J. Aug. 10, 2018). K.S. fails to allege, or plead facts to support an allegation, that Defendants are subject to ERISA § 502(c) liability because TPSC, who is neither a participant in nor a beneficiary of the Thales Plan, made a demand for an SPD to someone other than a plan administrator. *See Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, 2012 W.L. 762498, at *15 (D.N.J. Mar. 6, 2012)(dismissing complaint alleging that defendants failed to provide copies of plan documents because, inter alia, "[t]he Plaintiff has not followed the procedure prescribed by ERISA to obtain copies of the plan").

Third, to the extent K.S. argues in opposition that CareFirst was somehow acting as a "de facto" plan administrator, this argument has no merit. The Third Circuit has not yet taken up the issue, but the overwhelming majority of Circuit Courts, together with District Courts in New Jersey, categorically reject the concept of "de facto plan administrators" for the simple reason that "administrator" is given a precise definition in the statute.   *See Campo v. Oxford Health Plans, Inc.*, 2007 W.L. 1827220, * 5 (D.N.J. Jun. 26, 2007); *Bergamatto*, 2014 W.L. 3412990, at * 10 (collecting cases from the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits).  Accordingly, any "de facto administrator" argument from K.S. would be without merit.

For these reasons, Count Two's SPD-related allegations fail to state a claim.

**B.  ERISA Does Not Require Disclosure of "Fee Schedules" in Any Case.**

As a threshold matter, Count Two fails at the outset to the extent it is predicated on TPSC's purported demand for "fee schedules." As explained above, a plan administrator may face liability

under ERISA § 502(c) only where it fails to respond to a valid request for information *required to be provided by Subchapter 1* of ERISA, codified at 29 U.S.C. §§ 1001-1191c. "Fee schedules" are not such information. ERISA does not require – in Subchapter 1 or elsewhere – the disclosure of "fee schedules" or pricing data related to claims processing methodology. *See McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 2011 W.L. 4455994, at *6 (D.N.J. Sep. 23, 2011)("Such disclosure of detailed statistical compilations and data [used in calculating the usual and customary rates] was certainly not the intent of the drafters of ERISA or related regulations"); *Franco v. Connecticut Gen. Life Ins. Co.*, 818 F.Supp. 2d 792, 823 (D.N.J. 2011)(ERISA § 503 does not require the administrator to provide a claimant with the "functional equivalent of a data report on the calculation of [usual and customary rates]"), *rev'd on other grounds*, 647 Fed.Appx. 76 (3d Cir. 2016); *see also Atl. Spinal Care v. Aetna*, 2014 W.L. 1293246, at * 11 (D.N.J. Mar. 31. 2014).

The FAC seems to recognize as much, as K.S. ties her "fee schedule disclosure obligation" not to Subchapter I of the ERISA statute, but instead to 29 C.F.R. 2560.503-1. *FAC*, ¶ 17. This provision is an agency regulation – not a statutory disclosure obligation – which "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries." 29 C.F.R. 2560.503-1(a).[4] But even if the regulation were applicable in this context, Third Circuit precedent holds that claimants cannot recover per diem

---

[4]     The particular subsection of the regulation to which the FAC cites, 29 C.F.R. 2560.503-1(g)(v)(A), states that if a plan administrator of a group health plan issues an "adverse benefit determination" to a plan participant or beneficiary that is based on "an internal rule, guideline, protocol, or other similar criterion," then the written notification sent to the participant or beneficiary must set forth the rule, guideline, protocol, or other similar criterion, or alternatively must state that a copy of same will be provided free of charge upon request. As noted in the aforementioned *McDonough* case, however, the drafters of ERISA did not intend the statute *or* its related regulations to require disclosure of data used to determine rates. *See* 2011 W.L. 4455994, at *6.

penalties under ERISA § 502(c) for violation of agency regulations.  *See Groves v. Modified Ret. Plan*, 803 F.2d 109, 118 (3d Cir. 1986) (rejecting 502(c) penalties based on administrator's alleged violation of 29 C.F.R. 2560.503-1), *accord Kollman v. Hewitt Associates, LLC*, 487 F.3d 139 (3d Cir. 2007); *see also Byars v. Coca Cola Co.*, 517 F.3d 1256 (11th Cir. 2008) (statutory penalties are not permitted for violations of 29 C.F.R. § 2560.503-1); *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 407 (7th Cir. 1996) (same). Rather, the plain language of ERISA § 502(c)(1) imposes penalties only for failure to provide information directly required of an administrator by Subchapter I of ERISA.  *See Kollman*, 487 F.3d at 147 ("the words 'this subchapter' in § 502(c)(1) refer only to violations of statutorily imposed obligations, and that term does not embrace violations of regulations promulgated pursuant to the statute").  Accordingly, to the extent Count Two is predicated on a failure to disclose "fee schedules," or any information not expressly contemplated by ERISA Subchapter I, it fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the FAC fails to state a claim upon which relief may be granted and the Court must dismiss it.  The Court's dismissal should also be with  prejudice because counsel has already been given leave to amend its pleading once, and the FAC remains substantively deficient regardless of who the named plaintiff is.

**BECKER LLC**
Attorneys for Defendants


By:     /s/ Michael E. Holzapfel
        Michael E. Holzapfel


Dated: September 21, 2018