UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

———————————————————
                                               :
K.S.,                                          :
                                               :
            Plaintiff,                :
   v.                                        :   Civil Action No. 3:17-cv-07489-BRM-LHG
                                               :
                                               :
THALES USA, INC., and CAREFIRST                :
BLUE CROSS BLUE SHIELD,                        :
                                               :   **OPINION**
            Defendants.               :
———————————————————:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Thales USA, Inc. ("Thales") and CareFirst of Maryland, Inc., d/b/a CareFirst Blue Cross Blue Shield ("CareFirst") (collectively, "Defendants") seeking to dismiss Plaintiff K.S.'s ("Plaintiff" or "K.S.") First Amended Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 25.) K.S. filed an Opposition to Defendants' Motion to Dismiss (ECF No. 29) and Defendants filed a Reply Brief to K.S.'s Opposition. (ECF No. 30). Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED.**

    **I.**    **BACKGROUND**

        **A. Factual Background**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to K.S. *See*

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

On February 6, 2015, K.S. underwent a breast reconstructive surgery performed by Dr. Russell Ashinoff, a surgeon affiliated with The Plastic Surgery Center, P.A. ("TPSC"). (ECF No. 23 ¶ 9.) On the date of service, K.S. was enrolled in a self-funded healthcare benefit plan through Thales (the "Thales Plan"). (*Id.* ¶¶ 2, 7-8.)[1] CareFirst is the designated third-party administrator for the Thales Plan. (*Id.*)

K.S. was enrolled in the EPO (exclusive provider organization) coverage plan (the "EPO Plan") of the Thales Plan. (ECF No. 25-3, Ex. A; ECF No. 30 at 2-3.)[2] Pursuant to the Thales Plan's Summary Plan Description ("SPD"), the EPO Plan generally does not include out-of-network benefits. (ECF No. 25-4, Ex. B at 27-32.) Notably, the EPO Plan contains an anti-assignment clause which prohibits an enrollee from assigning his or her rights to receive benefits, with a limited exception, stating in pertinent part:

> A Member [of the EPO Plan] may not assign his or her rights to receive benefits or benefit payments under this Evidence of Coverage to another person or entity except for routine assignment of benefit payments to a Preferred Health Care Provider rendering Covered Services.

---

[1] It is undisputed that the Thales Plan is an employee welfare benefit plan as defined by ERISA, and that as such, ERISA governs this lawsuit.

[2] When Defendants filed their initial Motion to Dismiss in this matter, they inadvertently specified that K.S. was enrolled in the Thales Plan's PPO (preferred provider organization) coverage plan rather than the EPO Plan, in which she was actually enrolled. (ECF No. 25-3, Ex. A; ECF No. 30 at 2-3.) Accordingly, Defendants submitted the EOC for the PPO option rather than that for the EPO option. However, each plan contains the identical anti-assignment clause at issue herein. (ECF No. 13-3, Ex. A at 30; ECF No. 25-3 at 30.)

2

(ECF No. 25-3, Ex. A at 30.)

Additionally, the EPO Plan's Evidence of Coverage ("EOC") also includes a provision governing the amount the Thales Plan is required to pay on billed charges to out-of-network providers (the "Allowed Benefit"), stating:

> Non-preferred health care practitioner: For a healthcare practitioner that has not contracted with CareFirst, the Allowed Benefit for a covered service is based upon the lesser of the provider's actual charge or established fee schedule which, in some cases, will be a rate specified by applicable law. The benefit is payable to the Subscriber or to the health care practitioner, at the discretion of CareFirst. If CareFirst pays the Subscriber, it is the Member's responsibility to pay the health care practitioner. Additionally, the Member is responsible for any applicable Member payment amounts, as stated in the Schedule of Benefits, and for the difference between the Allowed Benefit and the health care practitioner's actual charge.

(ECF No. 25-3, Ex. A at 4.)[3]

TPSC is a provider outside of the Thales Plan's EPO Plan. (ECF No. 25-6, Ex. D; ECF No. ECF No. 29 at 6.) TPSC submitted a bill for surgical services to CareFirst in the amount of $104,968 for K.S.'s surgery. (ECF No. 23 ¶ 10.) On March 12, 2015, CareFirst denied the claim for payment in its entirety. (*Id.* ¶ 11.) On April 9, 2015, TPSC filed an appeal arguing that CareFirst had previously advised TPSC that K.S. had out-of-network coverage under a PPO plan. (*Id.* ¶ 10; ECF No. 25-6, Ex. D at 2-3.) There were no providers within K.S.'s in-network plan who were able to provide the surgery required. (TPSC Appeal of Claim Underpayment (ECF No. 25-6, Ex. D) at 3.) Therefore, TPSC was authorized to perform the surgery. (*Id.* at 3.)[4]

---

[3] This definition of an "Allowed Benefit," with respect to an out-of-network provider, is also provided in the May 22, 2015 letter sent from CareFirst to K.S. in which it reversed its decision to deny coverage. (ECF No. 25-7, Ex. E at 3.)

[4] Specifically, TPSC's appeal of claim underpayment stated "In the instant matter, [K.S.] required and was entitled to a continuation of care that included the surgery that Dr. Ashinoff performed on February 6, 2015 as this procedure was part of continued breast reconstruction which was

On May 22, 2015, CareFirst sent K.S. a letter indicating that it was reversing its earlier decision to deny the claim for coverage and determined that it would pay reimbursement under the Thales Plan at the in-network benefit rate. (ECF No. 23 ¶ 13.) Thereafter, CareFirst made a payment to TPSC in the amount of $10,483.62. (*Id.*) This amount constituted only 9.98% of the total balance of K.S.'s February 6, 2015 surgery. (*Id.*)

### B. Procedural History

On September 26, 2017, TPSC filed a Complaint (the "Complaint") against Defendants asserting benefits and penalties claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* (ECF No. 1.) On November 20, 2017 Defendants filed a Motion to Dismiss the Complaint asserting that TPSC lacks standing as ERISA confers no direct rights upon providers, but rather limits standing to plan "participants" and "beneficiaries." (ECF No. 13 at 6.) On May 24, 2018, this Court issued an Order dismissing TPSC from the case with prejudice, granting leave to file an amended complaint substituting a proposed participant as the plaintiff in the place of the provider, and dismissing Defendants' Motion to Dismiss as moot. (ECF No. 22.) Thereafter, on August 21, 2018, K.S. filed the Amended Complaint, asserting the same two causes of action against Defendants: a claim for ERISA benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) against Thales (Count One); and a claim pursuant to the ERISA penalty provision contained in 29 U.S.C. § 1132(c) against both Defendants (Count Two). (ECF No. 23.)[5]

On September 21, 2018, Defendants filed a Motion to Dismiss the Amended Complaint. (ECF No. 25.) On October 29, 2018, K.S. filed an Opposition to Defendants' Motion to Dismiss

---

performed by Dr. Ashinoff on November 5, 2014. The November 5, 2014 claim was processed and paid accordingly to [K.S.]'s benefit." (ECF No. 25-6, Ex. D at 3.)

[5] This Court notes that TPSC is not listed as a plaintiff in the Amended Complaint, although the docket indicates that TPSC filed the Amended Complaint. (ECF No. 23.)

(ECF No. 29) and on November 12, 2018, Defendants filed a Reply Brief to K.S.'s Opposition to its Motion to Dismiss. (ECF No. 30).

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it

5

must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

**III. DECISION**

Defendants contend this Court should dismiss the Amended Complaint in its entirety as K.S. does not allege that Defendants' failure to pay the amount of the surgery in full violated any plan term or condition or that an ERISA participant or beneficiary made a valid request for required information of a plan administrator. (ECF No. 25-1 at 9-20.) This Court addresses each argument

6

in turn.

### A. Count One

Defendants argue this Court should dismiss Count One of the Amended Complaint, asserted pursuant to 29 U.S.C. § 1132(a)(1)(B) against Thales, as K.S. is not seeking a declaratory order clarifying future benefits under the terms of the Thales Plan, Defendants are prohibited by federal law from paying any amount other than the Thales Plan's prescribed out-of-network allowances, and K.S. has failed to tie her claim to a specific plan term. (ECF No. 25-1 at 9-14.) K.S. counters that Defendants have made inconsistent filings with respect to which plan covers K.S. and that Defendants have conflated the in-network payment amount with the amount to which K.S. is entitled as set forth in the Thales Plan's "Allowed Benefits," thereby rendering the conclusions in the Motion to Dismiss factually and legally incorrect. (ECF No. 29 at 10-13.)

ERISA requires every "employee benefit plan be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), which specifies "the basis on which payments are to be made to and from the plan." 29 U.S.C. § 1102(b)(4); *see also Kennedy v. Plan Admin. of DuPont Savings & Inv. Plan*, 555 U.S. 285, 300 (2009). "The plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with . . . [Title I] and [Title IV] of [ERISA].'" *Kennedy*, 555 U.S. at 300 (quoting 29 U.S.C. § 1104(a)(1)(D)). Section 1132(a)(1)(B) confers upon a plaintiff standing to recover benefits due to him or her under their specific plan, to enforce any rights under that plan, or to clarify his or her rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). "A plaintiff seeking to recover under [this section] must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 575 (3d Cir. 2006) (citing 29

7

U.S.C. § 1132(a)(1)(B)).

Here, K.S. is not seeking a declaratory judgment clarifying future benefits under the terms of the Thales Plan, but rather contends that the Thales Plan should have paid the entirety of TPSC's billed out-of-network charge, and therefore seeks the difference between the payment amount and the total amount due. (ECF No. 1 ¶¶ 19-21; ECF No. 29 at 10.) Even assuming K.S.'s factual allegations to be true, the Amended Complaint fails to demonstrate an entitlement to relief pursuant to ERISA. Indeed, pursuant to its terms, the Thales Plan was only obligated to pay the Allowed Benefit. (ECF No. 25-3, Ex. A at 4.) Neither the Amended Complaint nor K.S.'s moving papers contain any allegations tying TPSC's demand for full payment of additional plan benefits – worth over $100,000 – to the plan itself.[6]

Federal law is clear that a plan is not required to make payments in excess of specified out-of-network allowances. *See Kennedy*, 555 U.S. at 300 (holding that the plan administrator is obliged to act in accordance with the plan documents and other instruments governing the plan); *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (holding that ERISA includes "an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations" and that its scheme "is built around reliance on the face of written plan documents"). Nothing in the Thales Plan, ERISA, or the applicable case law interpreting ERISA confers a right upon TPSC – a provider outside of the Thales Plan – or K.S. to demand anything other than the out-of-network allowance which Thales opted to underwrite as a benefit.

---

[6] Additionally, K.S. makes no allegation that she is due additional benefits under the Thales Plan pursuant to ERISA. Rather, K.S. argues the "reimbursement payment made by CareFirst to K.S. bears no rational relationship to what the [Thales] Plan requires" and that there "is no explanation . . . [as to] how the amount was calculated." (ECF No. 29 at 12.) However, 29 U.S.C. § 1132(a)(1)(B) includes no private cause of action for an explanation of benefits, but only for benefits that are actually "due" and those for which the plaintiff "has a right . . . that is legally enforceable against the plan." *Hooven*, 465 F.3d at 575.

8

In *Shah v. Horizon Blue Cross Blue Shield of New Jersey*, No. 17-0632, 2018 WL 1509087 (D.N.J. Mar. 27, 2018), this District was confronted with a similar set of facts as presented herein. The plaintiff in *Shah* was an out-of-plan physician who was assigned the rights of an ERISA plan beneficiary-patient, who sued a benefits plan for violations of ERISA when the plan paid him less than $10,000 on a $217,000 elective spine surgery. *Id.* at *1. In determining that the plaintiff did not have a colorable ERISA claim pursuant to the terms of the applicable plan, the court stated:

> The parties are likely to agree, and it is certainly this Court's observation, that ERISA-governed employer-sponsored health plans are complicated and comprehensive documents. There are several reasons for this. There are many types of medical providers and myriad services they perform. There are many ways to set a rate for or value those services. A plan must determine what it will cover, what it will not, and what it will pay as benefits. The plans may cover large groups of employees, may cover multiple employers, and apply across state borders . . . And like any well-drafted contract a plan would seek to anticipate and address all foreseeable scenarios.
>
> When [the patient] first consulted Plaintiff about his services, he had several options. First, he could have set what he perceived as the market rate for his services and conditions providing his services on the payment of that fee, leaving to the patient reimbursement under applicable insurance. Second, he could have agreed to accept [the patient]'s insurance and the benefit it provided . . . and billed [the patient] for the remaining [amount] of the allowed and clearly defined benefit.
>
> What he could not do was accept the benefit under the Plan, take an assignment from [the patient] of any additional claims she might have, and through this lawsuit seek to blow up – without legal or factual support – the carefully and clearly drafted mutually beneficial agreement between [the patient]'s spouse's employer and Defendant. Plaintiff's claim that he is entitled to 70% of the fee he has set for his services as against this Defendant lacks any support in the law or the Plan terms. Despite his protestations to the contrary, as the Court can best discern, Plaintiff seeks his demanded fee of over $217,000 simply because he thinks he's entitled to it.
>
> In sum, the clear, unambiguous, bargained for terms of the Plan provide for the exact payment Defendant paid Plaintiff.

*Id.* at *5.

Here, although K.S. has stood in the shoes of TPSC as the plaintiff, the thrust of her claim is almost identical to that in *Shah*. K.S. seeks reimbursement for a charge billed by an out-of-network provider yet does not tie her claim to any specific plan term. The Amended Complaint contains no information from which this Court can conclude that K.S. is entitled to some additional recovery from the Thales Plan. Rather, K.S. merely argues that the amount paid was "arbitrary" and "bears no rational relationship what the [Thales] Plan requires." (ECF No. 29 at 12.) This argument is unavailing. Defendants have provided an explanation for the payment amounts tendered, the applicable EOC for K.S.'s surgery, as well as a previous surgery K.S. underwent for which she claimed there was an inconsistent in-network level payment from the Thales Plan. (ECF No. 25-3 at 23-28; ECF No. 30 at 4.) Furthermore, K.S. provides no support for the contention that "[r]esolving issues of [whether a payment from an ERISA plan was arbitrary] is the essence of a plan enforcement action under ERISA." (ECF No. 29 at 12.) On the contrary, this contention conflicts with both the plain language of ERISA and the applicable case law.[7]

Similarly, several other decisions from this District have granted motions to dismiss in instances where a plaintiff has failed to tie his or her allegations of ERISA violations to specific provisions of an applicable plan. *See Atlantic Plastic & Hand Surgery, P.A. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2008) (holding that plaintiff's "threadbare allegation that Defendants violated § 502(a)(1)(B) by failing to pay the

---

[7] The Third Circuit has held that an action may be brought pursuant to § 502(a)(1)(B) of ERISA only to recover benefits due to the beneficiary under the terms of the plan and when such benefits have become vested. *See Saltzman v. Indep. Blue Cross*, 384 F. App'x 107, 111 (3d Cir. 2010) (citing *Hooven*, 465 F.3d at 574). Notably, resolving issues of whether a payment from an ERISA plan was arbitrary is not included in the Third Circuit's definition of a viable ERISA cause of action.

'usual and customary' charge for the Procedure, without any concomitant allegation that the Plan obligated Defendants to pay for out-of-network medical services in accordance with the 'usual and customary' rate, is fatal to their claim for unpaid benefits"); *see also Univ. Spine Ctr v. Cigna Health & Life Ins. Co.*, No. 17-13596, 2018 WL 4144684, at *2-3 (D.N.J. Aug. 29, 2018) (holding that the plaintiff's complaint failed to meet the *Twombly/Iqbal* pleading standard because the allegations were not tied to demands for additional benefits "under the terms of the Plan"); *see also LeMoine v. Empire Blue Cross Blue Shield*, No. 16-6876, 2018 WL 1773498, at *6 (D.N.J. Apr. 12, 2018) (dismissing a complaint where the plaintiff "fail[ed] to provide plausible allegations" demonstrating that "either [of the two plans at issue in the litigation] have been violated"); *see also Atlantic Plastic & Hand Surgery, P.A. v. Anthem Blue Cross Blue Shield Life & Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *8 (D.N.J. Oct. 31, 2018) (dismissing a complaint where plaintiff's "violation of ERISA allegations against [the defendant] for paying below the 'usual and customary charge' is conclusory and fails to raise the right to relief above a speculative level"). Here, as in the cited cases, K.S.'s allegations are merely conclusory and do not adequately state a right to relief pursuant to Section 502(a)(1)(B). Indeed, the Amended Complaint fails entirely to specify which portion of the Thales Plan the alleged underpayment violated, and absent such an allegation, the Amended Complaint cannot withstand Defendants' Motion to Dismiss. Accordingly, Count One of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

### B. Count Two

Count Two of the Amended Complaint seeks penalty damages against Defendants pursuant to ERISA's penalty provision, 29 U.S.C. § 1132(c)(1). In the Opposition to Defendants' Motion to Dismiss, K.S. agreed that Count Two of the Amended Complaint should be dismissed, stating,

"In Count Two, K.S. seeks to recover monetary penalties against [D]efendants for failing to provide documents to TPSC which was acting on behalf of K.S. K.S. will dismiss this claim." (ECF No. 29 at 8 n.6.) Accordingly, Count Two of the Amended Complaint is **DISMISSED WITH PREJUDICE**.

    **IV.**    **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** as set forth herein and in the accompanying order.


**Date: April 29, 2019**　　　　　　　　　　　*/s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**