NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

K.S.,

          Plaintiff,

v.

THALES USA, INC., and CAREFIRST
BLUE CROSS BLUE SHIELD,

          Defendants.

Case No. 3:17-cv-07489-BRM-LHG

OPINION

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Thales USA, Inc. ("Thales") and CareFirst of Maryland, Inc., d/b/a CareFirst Blue Cross Blue Shield ("CareFirst") (collectively, "Defendants") seeking to dismiss Plaintiff K.S.'s ("Plaintiff" or "K.S.") Second Amended Complaint (the "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 37.) K.S. filed an Opposition to Defendants' Motion to Dismiss (ECF No. 43) and Defendants filed a Reply Brief to K.S.'s Opposition. (ECF No. 44). Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED.**

**I.    BACKGROUND**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to K.S. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also

considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

On February 6, 2015, K.S. underwent a breast reconstructive surgery performed by Dr. Russell Ashinoff ("Dr. Ashinoff"), a surgeon affiliated with The Plastic Surgery Center, P.A. ("TPSC"). (ECF No. 33 ¶ 9.) On the date of service, K.S. was enrolled in a self-funded healthcare benefit plan through Thales (the "Thales Plan"). (*Id.* ¶¶ 2, 7-8.)[1] CareFirst is the designated third-party administrator for the Thales Plan. (*Id.*)[2]

K.S. was enrolled in the EPO (exclusive provider organization) coverage plan (the "EPO Plan") of the Thales Plan. (ECF No. 25-3, Ex. A; ECF No. 30 at 2-3.) Pursuant to the Thales Plan's Summary Plan Description ("SPD"), the EPO Plan generally does not include out-of-network benefits. (ECF No. 25-4, Ex. B at 27-32.) Notably, the EPO Plan contains an anti-assignment clause which prohibits an enrollee from assigning his or her rights to receive benefits, with a limited exception, stating in pertinent part:

> A Member [of the EPO Plan] may not assign his or her rights to receive benefits or benefit payments under this Evidence of Coverage to another person or entity except for routine assignment of benefit payments to a Preferred Health Care Provider rendering Covered Services.

(ECF No. 25-3, Ex. A at 30.)

---

[1] It is undisputed that the Thales Plan is an employee welfare benefit plan as defined by ERISA, and that as such, ERISA governs this lawsuit.

[2] A more detailed account of the relevant facts can be found in the Court's April 29, 2019 Opinion. (ECF No. 31.)

Additionally, the EPO Plan's Evidence of Coverage ("EOC") also includes a provision governing the amount the Thales Plan is required to pay on billed charges to out-of-network providers (the "Allowed Benefit"), stating:

> Non-preferred health care practitioner: For a healthcare practitioner that has not contracted with CareFirst, the Allowed Benefit for a covered service is based upon the lesser of the provider's actual charge or established fee schedule which, in some cases, will be a rate specified by applicable law. The benefit is payable to the Subscriber or to the health care practitioner, at the discretion of CareFirst. If CareFirst pays the Subscriber, it is the Member's responsibility to pay the health care practitioner. Additionally, the Member is responsible for any applicable Member payment amounts, as stated in the Schedule of Benefits, and for the difference between the Allowed Benefit and the health care practitioner's actual charge.

(ECF No. 25-3, Ex. A at 4.)[3]

TPSC is a provider outside of the Thales Plan's EPO Plan. (ECF No. 25-6, Ex. D; ECF No. ECF No. 29 at 6.) TPSC submitted a bill for surgical services to CareFirst in the amount of $104,968 for K.S.'s surgery. (ECF No. 33 ¶ 11.) On March 12, 2015, CareFirst denied the claim for payment in its entirety. (*Id.* ¶ 12.) On April 9, 2015, TPSC filed an appeal arguing that CareFirst had previously advised TPSC that K.S. had out-of-network coverage under a PPO plan. (*Id.* ¶ 13; ECF No. 25-6, Ex. D at 2-3.) There were no providers within K.S.'s in-network plan who were able to provide the surgery required. (TPSC Appeal of Claim Underpayment (ECF No. 25-6, Ex. D) at 3.) Therefore, TPSC was authorized to perform the surgery. (*Id.* at 3.)[4]

---

[3] This definition of an "Allowed Benefit," with respect to an out-of-network provider, is also provided in the May 22, 2015 letter sent from CareFirst to K.S. in which it reversed its decision to deny coverage. (ECF No. 25-7, Ex. E at 3.)

[4] Specifically, TPSC's appeal of claim underpayment stated "In the instant matter, [K.S.] required and was entitled to a continuation of care that included the surgery that Dr. Ashinoff performed on February 6, 2015 as this procedure was part of continued breast reconstruction which was performed by Dr. Ashinoff on November 5, 2014. The November 5, 2014 claim was processed and paid accordingly to [K.S.]'s benefit." (ECF No. 25-6, Ex. D at 3.)

On May 22, 2015, CareFirst sent K.S. a letter indicating that it was reversing its earlier decision to deny the claim for coverage and determined that it would pay reimbursement under the Thales Plan at the in-network benefit rate. (ECF No. 33 ¶ 14.) Thereafter, CareFirst made a payment to TPSC in the amount of $10,483.62. (*Id.*) This amount constituted only 9.98% of the total balance of K.S.'s February 6, 2015 surgery. (*Id.*)

On September 26, 2017, TPSC filed a Complaint (the "Complaint") against Defendants asserting benefits and penalties claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. (ECF No. 1.) On November 20, 2017 Defendants filed a Motion to Dismiss the Complaint asserting that TPSC lacks standing as ERISA confers no direct rights upon providers, but rather limits standing to plan "participants" and "beneficiaries." (ECF No. 13 at 6.) On May 24, 2018, this Court issued an Order dismissing TPSC from the case with prejudice, granting leave to file an amended complaint substituting a proposed participant as the plaintiff in the place of the provider, and dismissing Defendants' Motion to Dismiss as moot. (ECF No. 22.) Thereafter, on August 21, 2018, K.S. filed the Amended Complaint, asserting the same two causes of action against Defendants: a claim for ERISA benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) against Thales (Count One); and a claim pursuant to the ERISA penalty provision contained in 29 U.S.C. § 1132(c) against both Defendants (Count Two). (ECF No. 23.)[5]

On September 21, 2018, Defendants filed a Motion to Dismiss the Amended Complaint. (ECF No. 25.) On April 29, 2019, this Court issued an Order dismissing the Amended Complaint without prejudice with respect to both counts. (ECF No. 32.) On May 29, 2019, K.S. filed a one-count Second Amended Complaint (the "SAC") asserting a cause of action for ERISA benefits

---

[5] This Court notes that TPSC is not listed as a plaintiff in the Amended Complaint, although the docket indicates that TPSC filed the Amended Complaint. (ECF No. 23.)

pursuant to 29 U.S.C. § 1132(a)(1)(B). (ECF No. 33.) On July 12, 2019, Defendants filed a Motion to Dismiss the SAC. (ECF No. 37.) On August 26, 2019, K.S. filed an Opposition to Defendants' Motion to Dismiss (ECF No. 43) and on September 6, 2019, Defendants filed a Reply Brief to K.S.'s Opposition to its Motion to Dismiss. (ECF No. 44.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability

requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III.  DECISION

Defendants contend this Court should dismiss the SAC because K.S. has failed to tie its demand for additional benefits to a term of the Thales Plan. (ECF No. 37-1 at 12.)

ERISA requires every "employee benefit plan be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), which specifies "the basis on which payments are to be made to and from the plan." 29 U.S.C. § 1102(b)(4); *see also Kennedy v. Plan Admin. of DuPont Savings & Inv. Plan*, 555 U.S. 285, 300 (2009). "The plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with . . . [Title I] and [Title IV] of [ERISA].'" *Kennedy*, 555 U.S. at 300 (quoting 29 U.S.C. § 1104(a)(1)(D)). Section 1132(a)(1)(B) confers upon a plaintiff standing to recover benefits due to him or her under their specific plan, to enforce any rights under that plan, or to clarify his or her rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). "A plaintiff seeking to recover under [this section] must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 575 (3d Cir. 2006) (citing 29 U.S.C. § 1132(a)(1)(B)).

Several decisions from this District have granted motions to dismiss in instances where a plaintiff has failed to tie his or her allegations of ERISA violations to specific provisions of an applicable plan. *See Atlantic Plastic & Hand Surgery, P.A. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2008) (holding that plaintiff's "threadbare allegation that Defendants violated § 502(a)(1)(B) by failing to pay the 'usual and customary' charge for the Procedure, without any concomitant allegation that the Plan obligated Defendants to pay for out-of-network medical services in accordance with the 'usual and customary' rate, is fatal to their claim for unpaid benefits"); *see also Univ. Spine Ctr v. Cigna Health & Life Ins. Co.*, No. 17-13596, 2018 WL 4144684, at *2-3 (D.N.J. Aug. 29, 2018) (holding that the plaintiff's complaint failed to meet the Twombly/Iqbal pleading standard because the

allegations were not tied to demands for additional benefits "under the terms of the Plan"); *see also LeMoine v. Empire Blue Cross Blue Shield*, No. 16-6876, 2018 WL 1773498, at *6 (D.N.J. Apr. 12, 2018) (dismissing a complaint where the plaintiff "fail[ed] to provide plausible allegations" demonstrating that "either [of the two plans at issue in the litigation] have been violated"); *see also Atlantic Plastic & Hand Surgery, P.A. v. Anthem Blue Cross Blue Shield Life & Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *8 (D.N.J. Oct. 31, 2018) (dismissing a complaint where plaintiff's "violation of ERISA allegations against [the defendant] for paying below the 'usual and customary charge' is conclusory and fails to raise the right to relief above a speculative level").

Here, as in the cited cases and in accordance with this Court's April 29, 2019 Opinion (ECF No. 31), K.S.'s allegations are merely conclusory and do not adequately state a right to relief pursuant to Section 502(a)(1)(B). K.S.'s contention that "the amount that Care First allows the service is the reasonable and customary amount" does not appear anywhere in the Thales Plan. Indeed, K.S. concedes "the Thales Plan does not expressly contain that language." (ECF No. 37-1 at 17.) Pursuant to its terms, the Thales Plan was only obligated to pay the Allowed Benefit. (ECF No. 25-3, Ex. A at 4.) Neither the SAC nor K.S.'s moving papers contain any allegations tying TPSC's demand for full payment of additional plan benefits – worth over $100,000 – to the plan itself. Once again, because K.S. fails to tie her claim to any provision of the Thales Pan, the SAC cannot withstand Defendants' Motion to Dismiss. As K.S. has failed to cure the deficiencies of her first two Complaints, granting her leave to amend at this time would be futile. Accordingly, the SAC is **DISMISSED WITH PREJUDICE.**

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** as set forth herein and in the accompanying order.


**Date: February 18, 2020**                              */s/ Brian R. Martinotti*
                                                         **HON. BRIAN R. MARTINOTTI**
                                                         **UNITED STATES DISTRICT JUDGE**